**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Daniel Barnett, | ) | |
| | ) | C/A No.: 4:23-cv-00294-JD-TER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' MOTION FOR SUMMARY** |
| | ) | **JUDGMENT AND MEMORANDUM IN** |
| Florence County, South Carolina, Florence | ) | **SUPPORT** |
| County Sheriff's Office, Florence County | ) | |
| Detention Center, Florence County Sheriff | ) | |
| T.J. Joye, Anderson Beane, Scott Brown, | ) | |
| Darrin Yarborough, Christopher Owens, | ) | |
| Chase McDaniel, & Ben Price, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants, by and through their undersigned counsel, hereby file this Motion for Summary Judgment and Memorandum in Support pursuant to Fed. R. Civ. P. 56. This Motion should be granted as to all of the Plaintiff's claims against the Defendants raised in his Amended Complaint (Dkt. No. 1-1 at 24) as there are no genuine issues of material fact, and the Defendants are therefore entitled to judgment as a matter of law. This Motion is based upon the pleadings, affidavits, depositions, memoranda, the Federal Rules of Civil Procedure, applicable common and statutory law, and other evidence as may be accepted by the Court.

## FACTS

This case arises out of Plaintiff's February 11, 2021 arrest by an unidentified Florence County Sheriff's Office deputy on four counts of impersonating a law enforcement officer and four counts of unlawful carrying of a pistol. Dkt. No. 1-1 at 30. Prior to Plaintiff's arrest, Florence County Sheriff's Office Investigator Christopher Owens "received a phone call regarding a complaint wherein the complainant accused Plaintiff of impersonating a police officer and conducting illegal traffic stops in *Florence County*, South Carolina, prior to January 4, 2021." *Id*. at

29 (emphasis added). Investigator Owens thereafter obtained arrest warrants charging Plaintiff with impersonating a law enforcement officer and search warrants for Plaintiff's residence and vehicle. *Id*. Plaintiff alleges that, on December 14, 2021, all charges were dismissed by a Florence County magistrate judge at a preliminary hearing. Dkt. No. 1-1 at 31.

The underlying investigation in this case began on February 9, 2021 when Investigator Owens received information that a man had called FCSO to complain that Plaintiff was impersonating a police officer by conducting traffic stops in Florence County. Aff. of Christopher Owens at 1.[1] FCSO Sheriff T.J. Joye subsequently called several law enforcement contacts in the area, including then Darlington County Sheriff James Hudson, former Darlington County Sheriff Tony Chavis, and Town of Lamar Police Chief Carl Scott, and all of these individuals informed Sheriff Joye that Plaintiff was not employed by their agencies. Aff. of T.J. Joye at 1-2.[2]

On the same date as the initial complainant contacted FCSO, Plaintiff's girlfriend, Katelyn Campbell, voluntarily sat for a recorded interview with Investigator Owens. Owens Aff. at 2. The interview footage is provided as an exhibit to Investigator Owens' Affidavit. During the interview, Ms. Campbell repeatedly characterized Plaintiff as a liar and described him as "a dangerous person."[3] Owens Aff. Ex. A at 18:41:30. She showed and provided Investigator Owens with four videos that she had recorded on her cell phone and which depicted Plaintiff conducting traffic stops in Florence County between October and December of 2020. Owens Aff. at 2. Plaintiff conducted one of these traffic stops on a "suspicious vehicle" right in front of his home in Florence County. *Id*.

The videos depict Plaintiff, wearing civilian clothes, approaching vehicles while in possession of a handgun. *See* Owens Aff. Ex. B. The videos also show blue lights flashing from

---

[1] Defendant Owens' Affidavit is attached as **Exhibit 1**.
[2] Defendant Joye's Affidavit is attached as **Exhibit 2**.
[3] For example, Ms. Campbell showed Investigator Owens a video on her cell phone which she stated depicted Plaintiff driving his personal vehicle on October 31, 2020 "with his blue lights on going 97 miles per hour. Just for fun. Drinking and driving." Owens Aff. Ex. A at 18:43:20.

Plaintiff's personal vehicle which Ms. Campbell identified as a white 2017 Chevy Tahoe. *Id*., Owens Aff at 2. Ms. Campbell informed Investigator Owens that Plaintiff conducted each of the traffic stops in his personal vehicle, and she described how Plaintiff modified his personal vehicle to look like a police vehicle by installing light bars that he purchased, an in-car camera, a siren, and a laptop mount. Owens Aff. at 2-3. Investigator Owens subsequently ran Plaintiff's name through the SCDMV database and found that Plaintiff was the current owner of a 2017 Chevy Tahoe. *Id*. at 3.

During the interview, Ms. Campbell stated that Plaintiff recorded the illegal traffic stops and "has several flash drives" where he "keeps everything."[4] Owens Aff. Ex. A at 18:40:00. She described numerous electronic devices that she has seen in Plaintiff's possession and stated that she believes that he uploaded his traffic stop videos to one of those devices.[5] *Id*.



She also described how she has seen law enforcement items in Plaintiff's vehicle and residence, including badges from multiple law enforcement agencies, and stated Plaintiff **was not a police officer**. *Id*. at 18:43:00, Owens Aff. at 2.

---

[4] Plaintiff testified that he and Katelyn Campbell are now married. Dep. of Daniel Barnett, 61:8-10. Relevant portions of Plaintiff's deposition transcript are provided herewith as **Exhibit 3**.
[5] Indeed, Plaintiff produced one such video which appears to be obtained from his in-car camera. This video is provided herewith as **Exhibit 4**. In the footage, a screenshot of which is included above, Plaintiff and Ms. Campbell can be heard discussing the occupants of the "suspicious vehicle."

Based on the foregoing evidence, Investigator Owens sought arrest warrants for Plaintiff for impersonating a police officer and unlawful carrying of a handgun. Owens Aff. at 3. Investigator Owens also sought a search warrant for Plaintiff's residence and vehicles on the property. *Id*. All warrants were signed by a magistrate judge on February 11, 2021. *Id*. As Investigator Owens prepared to serve the warrants at Plaintiff's residence, another FCSO investigator informed him that Mr. Barnett had left his home in his white Chevy Tahoe. *Id*. at 4. The warrant service team immediately left the staging area and performed a traffic stop on Plaintiff's vehicle during which Plaintiff was arrested on the outstanding warrants. *Id*. Because Plaintiff's vehicle was no longer on the premises that was the subject of the search warrant, Investigator Owens subsequently sought a search warrant for the vehicle which was also signed by a magistrate judge. *Id*. at 5. Through the search warrants, Investigator Owens sought digital evidence of the type described by Ms. Campbell. *Id*. at 3, 5.

During the search of Plaintiff's residence, Investigator Owens "observed numerous law enforcement related items inside of the residence from different law enforcement agencies" just as described by Ms. Campbell. Owens Aff. at 5. During the search of Plaintiff's vehicle, Investigator "located light bars affixed to the inside of the vehicle's windshield that flashed blue lights in a rhythmic pattern." *Id*. at 6. He also located an in-car camera, a siren, and a Glock 43 handgun as described by Ms. Campbell. *Id*. at 6-7. Investigator Owens seized a cell phone found in the vehicle and provided it to FCSO Investigator Ben Price. *Id*. at 7. Investigator Price was certified to use the cell phone data extraction technology called Cellebrite. Dep. of Ben Price, 114:8-115:9.[6]

Investigator Price subsequently observed that data from Plaintiff's personal cell phone included "screen shots of social security information" which he shared in text messages with a SCDMV employee and a SLED Agent. *Id*. at 65:6-17; Owens Aff. at 7. When an investigator on

---

[6] Relevant portions of Ben Price's deposition transcript are provided herewith as **Exhibit 5**.

behalf of the Social Security Administration came to FCSO to collect Plaintiff's SSA-issued computer, Investigator Price showed the screenshots to the SSA investigator who "identified it as being part of their internal system." *Id*. at 78:14-24: Owens Aff. at 7.

Plaintiff filed his Amended Complaint on January 8, 2023 in the Florence County Circuit Court. Defendants subsequently removed the case to this Court based on Plaintiff's assertion of civil rights violations. Plaintiff asserts the following causes of action against all Defendants: (1) "Defamation Libel & Slander"; (2) defamation by omission; (3) false imprisonment; (4) malicious prosecution; (5) civil conspiracy; (6) "Negligence, including Gross Negligence"; (7) conversion; (8) "Violation of Electronic Communications Privacy Act"; (9) "violation of Article I, Section 3 & 10 of South Carolina Constitution"; (10) violation of the Computer Fraud and Abuse Act; (11) "Fourth & Fourt[eenth] Amendment Violations"; and (12) violation of 42 U.S.C. § 1983.[7] For the reasons below, Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss the Plaintiff's claims against them.

## ARGUMENT

### I.    FLORENCE COUNTY SHOULD BE DISMISSED AS AN IMPROPER PARTY.

Florence County cannot be vicariously liable for the conduct of the Florence County Sheriff's Office or employees of the Florence County Sheriff's Office as a matter of law. *See Parson v. Miles*, No. CV41700708RBHKDW, 2017 WL 9674475, at *8–10 (D.S.C. Oct. 6, 2017), *report and recommendation adopted as modified*, No. 417CV00708RBHKDW, 2018 WL 1477601 (D.S.C. Mar. 27, 2018) (dismissing claims against Marion County based on conduct of Marion County Sheriff's Department employees). Article V, section 24 of the South Carolina Constitution "makes it clear that county sheriffs and county sheriff's departments are state and

---

[7] Plaintiff's eleventh and twelfth causes of action appear to be duplicative as asserting § 1983 claims for a violation of Plaintiff's Fourth and Fourteenth Amendment rights.

not county officers or offices." *Id*. (citing numerous South Carolina cases including *Wyatt v. Fowler*, 484 S.E.2d 590, 593 (S.C. 1997)); *see also Drayton v. Cnty. of Charleston*, No. CIV.A. 2:14-3488-RMG, 2015 WL 4937358, at *2 (D.S.C. Aug. 17, 2015) (dismissing Charleston County as improper party for SCTCA claims). Moreover, to the extent that the Plaintiff bases his claims against Florence County on any conduct that occurred at the Florence County Detention Center, S.C. Code Ann. § 24-5-10 provides that the "county detention center is delegated by state law to the authority of the Sheriff, who is an appointee of the state, rather than the county government." *Cobb v. South Carolina*, No. 2:13-CV-02370-RMG, 2014 WL 4220423, at *2 (D.S.C. Aug. 25, 2014). Florence County should therefore be dismissed from this action.

## II. PLAINTIFF'S CLAIMS AGAINST FCSO, FCDC, AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED AS A MATTER OF LAW.

"To state a plausible claim for relief under 42 U.S.C. § 1983, an aggrieved party must sufficiently allege that he was injured by 'the deprivation of any [of his or her] rights, privileges, or immunities secured by the [United States] Constitution and laws' by a 'person' acting 'under color of state law.'" *Tarpein v. S.C. Dep't of Nat. Res.*, No. CV 1:23-5683-JFA-SVH, 2024 WL 4164707, at *3 (D.S.C. Apr. 30, 2024), *report and recommendation adopted*, No. 1:23-CV-05683-JFA, 2024 WL 3633652 (D.S.C. Aug. 1, 2024). "[A] defendant in a § 1983 action must qualify as a 'person' because [o]nly 'persons' may act under color of state law." *Id*. Neither the State nor "[g]roups of individuals in a building [ ] qualify as a 'person' who can act under color of state law for purposes of § 1983." *Id*.

In this case, the Florence County Sheriff's Office and the Florence County Detention Center are not "persons" who can be sued under 42 U.S.C. § 1983. To the extent that Plaintiff asserts his § 1983 claims against the individual Defendants in their official capacities, these

6

claims fail for the same reason. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Drayton*, 2015 WL 4937358, at *2 (observing that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and, therefore, claims against a sheriff in his official capacity and the sheriff's office are essentially the same defendant such that the sheriff should be dismissed).

Moreover, the Eleventh Amendment precludes suits against a state by one of its own citizens as well as suits by citizens of another state. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). "Such immunity extends to arms of the state, including a state's agencies, instrumentalities and employees." *Curry v. South Carolina*, No. CIV.A. 2:13-2707-TMC, 2013 WL 6662556, at *4 (D.S.C. Dec. 17, 2013). The Supreme Court has held that state officials acting in their official capacities are not subject to suit under § 1983. *Will*, 491 U.S. at 71. Thus, Plaintiff's claims against FCSO and the individual Defendants in their official capacities as employees of a state agency are barred by the Eleventh Amendment. *See Simmons v. Charleston Cnty. Sheriff's Off.*, No. CV 2:19-1754-BHH-BM, 2019 WL 7195601, at *2 (D.S.C. Sept. 26, 2019) (recommending that sheriff's office be dismissed because the State does not waive Eleventh Amendment immunity under the SCTCA and does not consent to suit in a federal court), *report and recommendation adopted in part*, No. CV 2:19-1754-BHH, 2019 WL 5387911 (D.S.C. Oct. 22, 2019).

## III.     PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT FLORENCE COUNTY DETENTION CENTER.

In addition to being an improper party as explained above, Plaintiff's factual allegations fail to support any cognizable claim against FCDC. Plaintiff does not allege that any FCDC employee harmed him, but correctly notes that "FCSO[] jail officer[s]" are employed by FCDC.

7

As stated above, S.C. Code Ann. § 24-5-10 provides that FCDC is under the authority of FCSO. Thus, any claims against FCDC are more properly asserted against FCSO. Nevertheless, Plaintiff does not allege any unlawful conduct associated with FCDC. While Plaintiff alleges that his "arrest was disseminated by the Defendants FCSO and FCDC on one or more websites and media outlets," Plaintiff fails to present any evidence to support this allegation, and any such reporting was privileged and truthful as more fully explained below.

## IV. PLAINTIFF'S § 1983 SUPERVISORY LIABILITY CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED AS A MATTER OF LAW.

"[T]he doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits." *Latimer v. Byers*, No. CIV.A. 6:11-3259-JFA, 2012 WL 3682893, at *4 (D.S.C. July 20, 2012). "[S]upervisory officials may be held liable in [only] certain circumstances for the constitutional injuries inflicted by their subordinates," but such a finding requires a "heavy burden of proof." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). The plaintiff in a supervisory liability case "not only must demonstrate that…[he] face[s] a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Id*. at 373. "[P]ointing to a single incident or isolated incidents" will not satisfy a plaintiff's heavy burden of proof, and the plaintiff must prove "[a] supervisor's continued inaction in the face of widespread abuses" such that the supervisor "was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id*.

In this case, Plaintiff's only allegations that could be construed as asserting a supervisory liability claim are conclusory and do not support any such claim against any of the Defendants. *See* Dkt. No. 1-1 at 24-25 Plaintiff's Amended Complaint is devoid of any factual allegations regarding "widespread abuses" or "corrective inaction" on the part of Sheriff Joye, much less

any allegations that would satisfy Plaintiff's "heavy burden of proof" to show deliberate indifference or tacit authorization on the part of Sheriff Joye or any other Defendant. Plaintiff therefore has failed to state a claim for supervisory liability against any Defendant in this action, and he has likewise failed to provide any evidence to support this claim.

## V.     PLAINTIFF HAS FAILED TO PLEAD AND PROVE PERSONAL PARTICIPATION OF SEVERAL INDIVIDUAL DEFENDANTS.

"The law is clear that personal participation of a defendant is a necessary element of a Section 1983 claim against government officials in their individual capacities." *Blessing v. Scaturo*, No. 6:16-cv-1832-BHH-KFM, 2017 WL 3575734, at *9 (D.S.C. July 28, 2017); *see also Scurmont LLC v. Firehouse Rest. Grp., Inc.*, No. 4:09-CV-00618-RBH, 2010 WL 11433199, at *16 (D.S.C. May 19, 2010) (dismissing claims against individual defendants because complaint did not differentiate between the defendants or contain any facts establishing how the defendants specifically participated in or directed any wrongful acts of employer).

Plaintiff alleges that Defendant Owens obtained the arrest warrants and search warrants at issue in this case. Dkt. No. 1-1 at 29. He further alleges that Defendant Price unlawfully searched his cell phone, and Defendant Beane used excessive force when Plaintiff was arrested. *Id*. at 34, 47. The remainder of Plaintiff's allegations asserted to support his § 1983 claims simply refer to "Defendants." Plaintiff fails to allege any facts establishing that Defendants Joye, Brown, Yarborough, or McDaniel "specifically participated in or directed any wrongful acts" that violated his Constitutional rights.

The evidence in this case shows that these Defendants did not violate Plaintiff's Constitutional rights. Plaintiff testified that he is not aware of any conduct of Defendant McDaniel that caused him harm. Barnett Dep. 123:3-5. Defendant McDaniel testified that he did not arrest Plaintiff and was not involved in obtaining any search warrants for Plaintiff's

residence, vehicle, or cell phone. Dep. of Chase McDaniel 25:8-11, 26:8:14, 50:20-51:9.[8]

Defendant Brown testified that he did not participate in Plaintiff's arrest, was not involved in any

way with obtaining the arrest or search warrants, and did not participate in the search of

Plaintiff's residence or vehicle. Dep. of Scott Brown 19:11-14, 21:8-10, 37:16-25.[9] Defendant

Yarborough testified that he was not involved in the investigation, Plaintiff's arrest, the search of

Plaintiff's vehicle or residence, or obtaining any warrants. Dep. of Darrin Yarborough 25:13-

26:17, 27:21-25, 31:9-12, 45:14-16.[10] Moreover, none of these Defendants were aware of any

involvement of Plaintiff in any investigations related to former FCSO member Mark Fuleihan.

McDaniel Dep. 120:15-18; Brown Dep. 92:14-20; Yarborough Dep. 63:9-11.

In sum, Plaintiff has failed to state any viable claims against Defendants Joye, McDaniel,

Brown, and Yarborough because he has failed to allege any personal participation of these

Defendants in any wrongful acts. Likewise, the evidence before the Court leaves no genuine

issue of fact for a jury as to whether these Defendants violated Plaintiff's Constitutional rights.

Plaintiff's § 1983 claims against these Defendants should therefore be dismissed. For the same

reasons, Plaintiff's state law claims against these Defendants should also be dismissed.

## VI.     PLAINTIFF'S STATE TORT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE BARRED BY THE SOUTH CAROLINA TORT CLAIMS ACT.

Under the South Carolina Tort Claims Act, an employee of a governmental entity who

commits a tort while acting within the scope of his official duty is generally not liable. S.C. Code

Ann. § 15-78-70(a). The Act provides that where the "employee is individually named, the agency

or political subdivision for which the employee was acting must be substituted as the party

---

[8] Relevant portions of Chase McDaniel's deposition transcript are provided herewith as **Exhibit 6**

[9] Relevant portions of Scott Brown's deposition transcript are provided herewith as **Exhibit 7**.

[10] Relevant portions of Darrin Yarborough's deposition transcript are provided herewith as **Exhibit 8**.

defendant." S.C. Code Ann. § 15-78-70(c). This Court has confirmed that, "when an entity is sued because of the alleged tort of an employee acting within the scope of his or her employment, the Tort Claims Act provides that only the agency shall be named as a party." *Kinard v. Greenville Police Dep't*, No. 10-cv-3246, 2011 WL 3439292, at *6 (D.S.C. Aug. 5, 2011).

In this case, Plaintiff is attempting to assert state tort claims against the individual Defendants as Florence County Sheriff's Office employees who were acting within the scope of their employment. Florence County Sheriff's Office is technically the only proper defendant for purposes of the Plaintiff's state tort claims, and these claims must be dismissed as to the individual Defendants. Finally, because Plaintiff's state tort claims against all Defendants arise from the obtaining and service of search and arrest warrants, these claims are barred by S.C. Code Ann. § 15–78–60(3) (execution, enforcement, or implementation of court orders or any process) and (23) (institution or prosecution of any judicial proceeding).

## VII.    PLAINTIFFS' 42 U.S.C. § 1983 CLAIM FOR UNLAWFUL SEARCH FAILS AS A MATTER OF LAW.

"A warrant is constitutionally sound when issued by a neutral magistrate and supported by probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011). "The magistrate issuing the search warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[, that] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 273 (4th Cir. 2004). "In addition to the requirement that a search warrant be supported by probable cause, the warrant must particularly describe the place where the search will occur and the 'persons or things to be seized.'" *Id*. at 274. This Court has held that a facially valid search warrant precludes a § 1983 unlawful search claim. *Page v. Cartwright*, No.

11

416CV02820RBHKDW, 2017 WL 8794882, at *5 (D.S.C. Nov. 9, 2017), *report and recommendation adopted*, No. 416CV02820RBHKDW, 2018 WL 797533 (D.S.C. Feb. 9, 2018).

In this case, the affidavit supporting the search of Plaintiff's home described the "credible and reliable information from a witness" that Investigator Owens received showing Plaintiff was impersonating a police officer by conducting traffic stops and illegally detaining "unaware citizens in Florence County." *See* Owens Aff. Ex. E. The affidavit further described how the witness testimony was corroborated by video evidence of the crimes before moving to the reason for the search warrant – the witness provided information that Plaintiff recorded the traffic stops, saved videos to his electronic devices, and items "used in the commission of the impersonations" were inside of his home and vehicle. *Id*. The affidavit supporting the search of Plaintiff's vehicle added the crucial detail that Plaintiff "was illegally detaining individuals by activating blue lights in his personal car." *Id*. Investigator Owens testified under oath as to these facts as part of his application for the search warrants. Owens Aff. at 3, 6. These affidavits set forth more than just a fair probability that evidence of Plaintiff impersonating a law enforcement officer would be found at his residence and inside of his vehicle. Notably, each warrant was signed by a separate magistrate judge, meaning that two separate magistrate judges determined that probable cause existed to search Plaintiff's residence and vehicle under the circumstances described by the affidavit. *See Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317 (1983) ("A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'").

The search warrants describe with particularity the place where the search will occur and the things to be seized. Both warrants sought essentially the same property which included "[c]lothing, equipment, badges, symbols, photographs, images, digital or otherwise, [or] other indicia of law enforcement authority or activity." The property authorized to be seized was

limited to the evidence of the particular crime with which Plaintiff was charged. One warrant identified Plaintiff's residence by its address while the other identified Plaintiff's vehicle by make, model, license plate, and vehicle identification number. Thus, not only were these warrants supported by probable cause, but they satisfied the particularity requirements such that any search pursuant to these warrants did not violate Plaintiff's Fourth Amendment rights. Moreover, every item that was seized from Plaintiff's residence is listed on the search warrant returns which are attached to Investigator Owens' Affidavit. Owens Aff. at 5-7, Ex. E. The list shows that only items within scope of the warrants were seized as evidence of Plaintiff's impersonation of a police officer.

Plaintiff's allegations regarding the search warrant returns do constitute a Fourth Amendment violation claim that has been recognized by any court in the Fourth Circuit. Plaintiff's allegation that "Defendants [ ] utilized unreasonable and unlawful methods when searching Plaintiff's residence and automobile" is conclusory and unsupported by any facts or evidence. Investigator Owens confirmed that his searches were in accordance with his training from the South Carolina Criminal Justice Academy. *Id*. at 8.

As to the search of Plaintiff's cell phone, both search warrants specifically identified "digital" evidence of "law enforcement operations or activity" "contained on any electronic medium, including but not limited to [ ] cellular telephones." This description satisfies the particularity requirement by describing the items to be seized "in a manner that allows the executing officer to know precisely what he has been authorized to search for and seize." *United States v. Cobb*, 970 F.3d 319, 328-29 (4th Cir. 2020). Indeed, Investigator Price confirmed that he acted pursuant to a valid search warrant. Price Dep. 55:15-56:2.

13

Moreover, the evidence shows that Plaintiff provided his consent to search his cell phone and provided the cell phone's passcode to Investigator Owens.[11] Owens Aff. at 4. Investigator Price confirmed that "if [Plaintiff] would have not given [Owens] the pass code to the phone, then at that point in time, we would have not been able to get into the phone at all." Price Dep. 40:22-41:6. Despite Plaintiff's consent, Investigator obtained yet another search warrant following Plaintiff's arrest. Owens Aff. at 5. Because Investigator Price had a valid search warrant for Plaintiff's cell phone data and Plaintiff provided consent to search his cell phone, Plaintiff's unlawful search claim must fail.

## VIII.    PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR UNLAWFUL SEIZURE AND DUE PROCESS VIOLATIONS FAILS AS A MATTER OF LAW.

Plaintiff's § 1983 Fourteenth Amendment due process claim is inapplicable in this case because his claims arise out of his arrest. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). Because the Fourth Amendment provides "an explicit textual source" for unlawful search, unlawful seizure and excessive force claims, the Fourteenth Amendment provides no alternative basis for those claims. Therefore, the Plaintiff's § 1983 claim should be dismissed to the extent that it is based on the Fourteenth Amendment.

Moreover, Plaintiff's § 1983 Fourth Amendment claim for improper seizure fails because Plaintiff has not alleged or produced any evidence identifying the individual who placed him under arrest. To the extent that Plaintiff bases his claims on a theory of bystander liability, each Defendant has testified that they did not have any knowledge that he was a police officer at the

---

[11] Plaintiff also provided the passcode to get into his home. Barnett Dep. 73:17-20.

time of his arrest. *See* Price Dep. 113:4-7 (not aware Plaintiff was police officer); Brown Dep. 11:13-22 (does not know Plaintiff); Yarborough Dep. 64:1-10 (never knew Plaintiff was a police officer); McDaniel Dep. 24:14-19 (did not know Plaintiff's status as police officer); Aff. of Anderson Beane at 2[12] (did not know Plaintiff was police officer); Owens Aff. at 8 (did not know Plaintiff); *see also Randall v. Prince George's Cnty.*, 302 F.3d 188, 205 n.24 (4th Cir. 2002) ("If the bystander lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible.").

This claims also fails because Plaintiff cannot show that he was arrested without probable cause as is required to establish a § 1983 claim unlawful seizure in violation of the Fourth Amendment. *Martin v. Montgomery*, No. CV 0:20-1400-MGL-PJG, 2021 WL 8014686, at *4 (D.S.C. Aug. 31, 2021), *report and recommendation adopted in part*, No. CV 0:20-01400-MGL, 2022 WL 601815 (D.S.C. Mar. 1, 2022). Probable cause for an arrest "arises when 'facts and circumstances within the officer's knowledge…are sufficient to warrant a prudent person, or one of reasonable caution, in believing'" under the circumstances that the suspect has committed a crime. *United States v. Dickerson*, 27 F. App'x 236, 242 (4th Cir. 2001) (internal citation omitted). "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "When a plaintiff alleges a lack of probable cause for an arrest, he 'must allege a set of facts which made it unjustifiable for a reasonable officer to conclude' that the plaintiff was involved in the charged offense." *Page*, 2017 WL 8794882, at *3. Finally, "[a] facially-valid-arrest warrant provides the arresting officer with sufficient probable cause to arrest the individual identified in the warrant." *Id*. at *4.

---

[12] Anderson Beane's Affidavit is provided herewith as **Exhibit 12**.

A.    <u>Probable cause existed at the time of Plaintiff's arrest under the facts then known to Investigator Owen.</u>

In this case, Plaintiff was arrested pursuant to eight facially valid arrest warrants that were each supported by probable cause. The warrants were signed by a neutral and detached magistrate judge following sworn testimony from Investigator Owens. The warrants include the facts discovered by Investigator Owens during his investigation as told to him by Plaintiff's girlfriend and corroborated by the video footage of the traffic stops that he personally viewed. The video footage is specifically referenced in the arrest warrants. Plaintiff's contention that he was a Darlington County reserve deputy at the time of the traffic stops does not negate the probable cause stated in the warrant because the warrants state that each traffic stop occurred in Florence County. The arrest warrants were therefore valid and provided the unidentified arresting officer with probable cause to make a lawful arrest of Plaintiff. Plaintiff has failed to offer any evidence showing otherwise.

The evidence also shows that probable cause existed to charge Plaintiff with four counts of impersonating a law enforcement officer in violation of S.C. Code Ann. § 16-17-720 and four counts of unlawful carrying of a handgun in violation of S.C. Code Ann. § 16-23-20. Section 16-17-720 makes it "unlawful for any person other than a **<u>duly</u> <u>authorized</u>** law enforcement officer to represent to any person that he is a law enforcement officer and, acting upon such representation, to arrest or detain any person[ ] or in any way impersonate a law enforcement officer or act in accordance with the authority commonly given to such officers." At the time of the Plaintiff's arrest, Section 16-23-20 made it "unlawful for anyone to carry about the person any handgun, whether concealed or not" and provided an exception for "reserve police officers of a…county of the State…[only] <u>when they are carrying out official duties</u>."

16

At the time that Investigator Owens sought the arrest warrants, he was not aware of any evidence that Plaintiff was a law enforcement officer. To the contrary, he had knowledge that the (1) initial complainant, (2) Plaintiff's girlfriend, (3) former DCSO Sheriff Chavis, (4) current DCSO Sheriff Hudson, and (5) Lamar Police Chief Scott all stated that the Plaintiff was not a law enforcement officer. Ms. Campbell was a first-hand witness to Plaintiff representing himself as a law enforcement officer and conducting four traffic stops in his personal vehicle where he detained members of the general public while dressed in civilian clothes and carrying a handgun. This witness account was corroborated by four videos that were taken by Ms. Campbell and provided to Investigator Owens which showed the exact conduct alleged by both the initial complainant and Ms. Campbell. Ms. Campbell also described the considerable efforts of Plaintiff to make his vehicle appear to be a law enforcement vehicle including the installation of blue lights and a siren. Based on this substantial evidence known to Investigator Owens and presented to the Court in support of this motion, the facts and circumstances within Investigator Owens' knowledge were sufficient to warrant a reasonable, prudent person in believing that Plaintiff had committed the crimes of impersonating a police officer and unlawful carrying of a handgun. The magistrate judge agreed and signed the warrants. Because the charges were supported by probable cause and Plaintiff was arrested pursuant to facially valid warrants, this claim should be dismissed.

Moreover, Investigator Owens also had probable cause to charge Plaintiff with the blue lights and siren on his personal vehicle in violation of S.C. Code Ann. § 56-5-4830 (Special restrictions on lamps; degree of intensity; red, blue and flashing lights) and S.C. Code Ann. § 56-5-4950 (Horns and warning devices). *See Stavis v. Reynolds*, No. CIVA 2:092272DCNRSC, 2010 WL 1294113, at *3 (D.S.C. Mar. 5, 2010) ("A [Fourth Amendment] claim for false arrest

turns only on whether probable cause existed to arrest a defendant, and … it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest."), *aff'd*, No. C/A 2:09-2272 DCN, 2010 WL 1257344 (D.S.C. Mar. 29, 2010). Section 56-5-4830 makes it unlawful for a person to drive a vehicle equipped with an unauthorized "blue light visible from directly in front of the center of it" and prohibits "flashing lights…except on an authorized emergency vehicle. Section 56-5-4950 makes it unlawful for any "vehicle other than an authorized emergency vehicle" to be equipped with "any siren, whistle or bell." Ms. Campbell informed Investigator Owens that Plaintiff purchased and installed blue lights in his vehicle which was also equipped with a siren. This witness account was corroborated by the videos of the traffic stop as well as Investigator Owens' observation of light bars inside of Plaintiff's vehicle during the traffic stop.

Importantly, <u>Plaintiff admitted during his deposition that, while he conducted traffic stops in Florence County, his jurisdiction was Darlington County and he did not have any authority to conduct traffic stops in another county for traffic offenses</u>. Barnett Dep. 49:22-50:10, 51:10-12. Plaintiff admitted to conducting all four of the traffic stops recorded by Ms. Campbell and specifically recalled conducting a traffic stop at nighttime in Johnsonville in his personal vehicle while his "wife" sat in the front seat. *Id*. 50:11-16, 52:6-7, 53:7-11, 57:5-16. His personal vehicle was equipped with blue lights which assisted him with pulling the vehicle over. *Id*. at 50:21-51:4. He stated that he was wearing a badge and gun during the traffic stop. *Id*. at 51:17-21. Plaintiff testified that he conducted a traffic stop in his Florence County neighborhood when he observed a "suspicious" vehicle.[13] *Id*. at 54:21-55:9. He stated that he used his blue lights and had his

---

[13] Aside from lacking any legal authority to detain the motorist during this stop, this stop was clearly illegal as lacking any reasonable suspicion or probable cause under the circumstances described by Plaintiff. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (a *Terry* stop violates the Fourth Amendment in the absence of "a reasonable, articulable suspicion that criminal activity is afoot").

"weapon and badge on" during the stop. *Id*. at 55:14-21. Plaintiff's deposition testimony not only corroborates the evidence known to Investigator Owens which supported probable cause for Plaintiff's criminal charges but establishes his guilt as to these charges.

B.      Plaintiff's employment as a reserve deputy for Darlington County Sheriff's Office does not negate probable cause for the arrest.

Even if it were known to Investigator Owens at the time of the arrest that Plaintiff was a reserve deputy for the Darlington County Sheriff's Office, the evidence described above supported probable cause to charge Plaintiff with impersonating a law enforcement officer and unlawful carrying of a handgun. By Plaintiff's own admission, his jurisdiction was in Darlington County. He was therefore not "duly authorized" to detain anyone by conducting traffic stops in Florence County as portrayed by the video footage provided by Ms. Campbell. He also was not "carrying out his duties" as a Darlington County deputy by spontaneously conducting traffic stops in Florence County in his personal vehicle while wearing civilian clothes and therefore could not legally openly carry a handgun as portrayed in the video footage. *See* S.C. Code Ann. § 23-28-100 ("Reserves shall wear uniforms which shall identify them as law enforcement officers."); *see also* 1991 WL 632972, at *1 (S.C.A.G. Apr. 26, 1991) ("reserves are not permitted to wear civilian clothes while carrying out their duties as reserves"); S.C. Code Ann. § 23-28-70 ("Reserves shall serve and function as law enforcement officers only on specific orders and directions of the chief.").

The laws of this state provide for very particular circumstances when a law enforcement officer may legally act outside of his jurisdiction. In the context of municipal police officers, the South Carolina Supreme Court has held that "[t]he jurisdiction of a municipal police officer, absent specific statutory authority, generally does not extent beyond the territorial limits of the municipality." *State v. Harris*, 299 S.C. 157, 159, 382 S.E.2d 925, 926 (1989). Additionally, S.C.

19

Code Ann. § 17-13-40(B) provides that, "[w]hen the police authorities of a county <u>are in pursuit</u> of an offender for a violation of a county ordinance or statute of this State <u>committed within the</u> <u>county</u>, the authorities may arrest the offender, with or without a warrant, at a place within the county, or at a place within an adjacent county." Subsection (C) is also noteworthy because it specifically references that "a law enforcement officer's jurisdiction is *expanded* pursuant to this section." S.C. Code Ann. § 17-13-40(C) (emphasis added). These statutes did not provide Plaintiff with the authority to conduct traffic stops in Florence County because he was not in pursuit and he did not observe any crime committed within Darlington County which served as the grounds for the traffic stop. The evidence reflects, rather, that any alleged violations that he may have observed were committed in Florence County, and he did not actually observe any crime at all prior to initiating the traffic stop in front of his residence.

The Supreme Court again confronted the law enforcement jurisdictional issue in *State v. Boswell*, 391 S.C. 592, 600, 707 S.E.2d 265, 269 (2011). Having found that Lexington County officers did not have a warrant for and were not in pursuit of the arrestee, the Court stated that "the only two grounds by which the Lexington County officers could have been authorized to arrest Boswell in Calhoun County are the [ ] multi-jurisdictional agreement or via a private citizens arrest." *Id*. The Court held that "a citizen's power to arrest [is clearly limited] only in those instances involving a felony" and subsequently found that the arrest was unlawful "as there was no specific statutory authorization or valid agreement between [the counties] to authorize the warrantless arrest." *Id*. at 604, S.E.2d at 271.

The same jurisdictional framework outlined by the Court in *Boswell* applies in this case. There is no evidence in the record that Plaintiff had an arrest warrant, observed a felony, or was

20

acting pursuant to a mutual aid agreement.[14] FCSO Major Michael Nunn assisted in the preparation of the Mutual Aid Agreement between FCSO and DCSO that was in effect at the time of the events giving rise to this lawsuit. Aff. of Michael Nunn at 1-2.[15] The Agreement provides that "Darlington County deputies may only act as law enforcement officers in Florence County if specifically requested by the Florence County Sheriff." *Id*. at 2. William Barnes, Jr. was the interim Sheriff at the time that Plaintiff conducted traffic stops in Florence County, and he confirms that he "never requested the assistance of [Plaintiff] in a law enforcement capacity or otherwise and never authorized him to act as a law enforcement officer in Florence County." Aff. of William C. Barnes, Jr.[16] Plaintiff similarly did not recall his assistance ever being requested by FCSO. Barnett Dep. 49:7-10. As such, "the Mutual Aid Agreement did not provide [Plaintiff] with the authority to conduct the traffic stops at issue in Florence County." Nunn Aff. at 2.

Pursuant to the legal authority cited above, Plaintiff was not duly authorized to act as a law enforcement officer in Florence County when he conducted the traffic stops that served as the basis for his criminal charges. Under these circumstances as demonstrated by the evidence before the Court, a reasonable, prudent person would have believed that Plaintiff had committed the crimes of impersonating a police officer and unlawful carrying of a handgun. Therefore, probable cause existed for Plaintiff's arrest on these charges.

## IX.     PLAINTIFF'S 42 U.S.C. § 1983 EXCESSIVE FORCE CLAIM FAILS AS A MATTER OF LAW.

---

[14] A mutual aid agreement is defined under S.C. Code Ann. § 23-20-20(4) as "any agreement entered into on behalf of a law enforcement agency in this State for the purpose of providing the proper and prudent exercise of public safety functions across jurisdictional lines." (emphasis added).
[15] Major Nunn's Affidavit is provided herewith as **Exhibit 9**.
[16] William Barnes, Jr.'s Affidavit is provided herewith as **Exhibit 10**.

"[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard…." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989). "The extent of the plaintiff's injury is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers…violates the Fourth Amendment." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. An officer is "authorized to take such steps as [are] reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of [a traffic] stop." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675 (1985). Officers drawing weapons is "well within the range of permissible police conduct." *United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988). While "approaching a suspect with drawn weapons are extraordinary measures, such police procedures have been justified in this circuit as a reasonable means of neutralizing potential danger to police and innocent bystanders." *Id*. at 213-14; *see also Gunsay v. Mozayeni*, 695 F. App'x 696, 699, 701 (4th Cir. 2017) (finding officers were entitled to qualified immunity when they "approached [the arrestee's] car with their guns drawn, pointed their guns at [the arrestees'] heads," and "removed [arrestee] from the car, forced her to the ground, and arrested her pursuant to two outstanding felony warrants"); *Magwood v. Fowler*, No. 2:19-cv-2277, 2021 WL 2885975, at *4 (D.S.C. July 9, 2021) ("[T]here is no case that establishes that pointing a weapon at a suspect believed to be armed during [a traffic] stop, where that suspect is not yet secure, violates the Fourth Amendment").

Plaintiff testified that did not know whether any officers other than Defendant Beane were carrying weapons or the identity of any other officer present, and Plaintiff does not allege

that any of the other officers touched him at any time. Barnett Dep. 73:2-4, 124:7-18; *see Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002) (officers who are not alleged to have touched arrestee during arrest could not be subject to § 1983 excessive force claim). The evidence before the Court shows that Defendant Beane did not touch Plaintiff, speak to Plaintiff, point a gun at Plaintiff, or approach anywhere near Plaintiff at the time of his arrest. Beane Aff. at 2, Owens Aff. at 4, Yarborough Dep. 28:8-15, McDaniel Dep. 26:18-23, 34:18-35:9. Plaintiff's excessive force claim is therefore without merit.

Nevertheless, even accepting Plaintiff's unsupported allegations against Defendant Beane as true, it was objectively reasonable for officers at the scene to draw their guns towards Plaintiff as they were aware that Plaintiff was in possession of multiple firearms.[17] *See Foote v. Dunagan*, 33 F.3d 445 (4th Cir. 1994) (observing that an officer approaching a subject during a *Terry* stop who is suspected of being armed and dangerous does not need probable cause to justify drawing his weapon because "[t]he Constitution does not require the officer who finds himself in such circumstances to ask the question and take the risk that the answer might be a bullet"). Unlike a *Terry* stop, the officers in this case were serving warrants for multiple firearms charges that were supported by probable cause and signed by a magistrate judge. Under these circumstances, it was reasonable for officers to believe that Plaintiff was armed, and that belief was confirmed when Investigator Owens observed a handgun inside of Plaintiff's vehicle within Plaintiff's reach. The evidence shows that the officers drew their weapons only long enough to ensure their safety and control of the situation before holstering them when Plaintiff was placed in handcuffs. Beane Aff. at 2, Owens Aff. at 4. Moreover, Plaintiff testified that was not injured during the arrest.

---

[17] This consideration was one of many that the officers examined when preparing the Warrant Service Risk Assessment. Owens Aff. at 3. The total score of the assessment, indicating the dangers associated with the warrant service, "was extremely high" in this case. *Id*.

Barnett Dep. 124:25-125:2. Based on the foregoing, the officers' actions were reasonable and did not violate Plaintiff's Fourth Amendment rights.[18]

## X.     PLAINTIFF'S FALSE IMPRISONMENT CLAIM FAILS AS A MATTER OF LAW.

The elements of false arrest in South Carolina are "intentional restraint of another without lawful justification." *Carter v. Bryant*, 429 S.C. 298, 306, 838 S.E.2d 523, 527 (Ct. App. 2020). In an action for false arrest, the plaintiff has the burden of demonstrating lack of probable cause. *Jackson v. City of Abbeville*, 366 S.C. 662, 666, 623 S.E.2d 656, 658 (Ct. App. 2005). Probable cause does not turn on an individual's guilt or innocence, but rather "a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinary prudent and cautious person, under the circumstances, to believe likewise." *Id*. at 366 S.C. 666, 623 S.E.2d 658; *Gist v. Berkeley Cty. Sheriff's Dep't*, 336 S.C. 611, 615, 521 S.E.2d 163, 165 (Ct. App. 1999). Furthermore, "the determination of 'probable cause to arrest' for the purpose of [a plaintiff's] tort claims may properly include consideration of an uncharged offense" such that a finding of probable cause on the uncharged offense will defeat the plaintiff's claims. *Jackson*, 366 S.C. 666, 623 S.E.2d 658.

The analysis of Plaintiff's Fourth Amendment unlawful seizure claim is also dispositive of Plaintiff's false arrest claim. Plaintiff was arrested pursuant to facially valid arrest warrants, and this fact precludes him from succeeding on this claim. *See Carter*, 429 S.C. at 306, 838 S.E.2d at 528 ("It has long been the law that one arrested pursuant to a facially valid warrant has no cause of action for false arrest."). Moreover, Plaintiff has not identified or produced any

---

[18] "To the extent Plaintiff brings a cause of action for excessive force based on the officers' threats or slurs, this allegation fails as a matter of law because use of abusive language alone is not a basis for a civil rights action." *Johnson v. Cnty. of Greenville*, No. 6:13-CV-01652-JMC, 2015 WL 4508812, at *12 (D.S.C. July 24, 2015).

evidence showing the individual who placed him under arrest, and his arrest was supported by probable cause for the charges upon which he was arrested as well as multiple uncharged offenses. Plaintiff has not offered any evidence to create a genuine issue of fact with respect to this claim, and it should therefore be dismissed.

## XI.     PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW.

"To maintain an action for malicious prosecution, plaintiff must show (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) termination of such proceeding in plaintiff's favor; (4) malice in instituting such proceedings; (5) want of probable cause, and (6) resulting injury or damage." *Parrott v. Plowden Motor Co.*, 246 S.C. 318, 143 S.E.2d 607, 608 (S.C.1965). The South Carolina Tort Claims Act provides that a government entity is not liable for a loss resulting from the "institution or prosecution of any judicial or administrative proceeding." S.C. Code § 15-78-60(23). This Court has previously recognized that, "[b]ecause the first element of a malicious prosecution claim requires the institution or continuation of original judicial proceedings, '[i]t is fairly clear from the plain language of the statute, particularly § 15-78-60(23), that the legislature intended to exclude claims for malicious prosecution from the waiver of immunity for governmental entities in the [SCTCA].'" *Land v. Barlow*, No. 2:21-cv-01883-RMG-MHC, 2021 WL 6495298, at *9 (D.S.C. Dec. 20, 2021); *see also Bellamy v. Horry Cty. Police Dep't*, No. 419CV03462RBHKDW, 2020 WL 2559544, at *5 (D.S.C. Apr. 30, 2020), *report and recommendation adopted*, No. 419CV03462RBHKDW, 2020 WL 2556953 (D.S.C. May 20, 2020) (dismissing malicious prosecution claim against police department); *Grant v. Berkeley Cnty. Sheriff's Off.*, No. 2:24-CV-4262-RMG-MHC, 2024 WL 4291416, at *8 (D.S.C. Sept. 6,

2024), *report and recommendation adopted*, No. 2:24-CV-4262-RMG, 2024 WL 4286217 (D.S.C. Sept. 25, 2024) (same).

In this case, it is undisputed that the Defendants are governmental entities and employees and are accordingly immune from suit from Plaintiff's malicious prosecution claim under the Act based on the above legal authority. Plaintiff alleges that the individual Defendants were at all times acting in the course and scope of their employment with FCSO. Consequently, the individual Defendants are not the proper parties for state tort claims as explained above and, like FCSO, they are specifically immune from liability related to a loss from "institution or prosecution of any judicial or administrative proceeding." Should the Court find that any of the Defendants are proper parties for the purposes of this claim, probable cause existed for Plaintiff's arrest as explained above. Plaintiff's malicious prosecution claim therefore fails and should be dismissed.

## XII.    PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY.

In South Carolina, a plaintiff asserting a civil conspiracy claim must plead facts to establish "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021). Important here, Plaintiff "must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774.

In this case, Plaintiff does not allege "additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in" his Amended Complaint. The

26

allegations under this cause of action are simply a statement of some of the elements of a civil conspiracy claim. The remaining allegations in Plaintiff's Amended Complaint relate to Plaintiff's unlawful search, unlawful seizure, and excessive force claims against Defendants. Plaintiff does not plead any additional facts to support this cause of action. To the extent that the Court construes any allegations related to "retaliation" against Plaintiff for his alleged involvement in any investigations as support for this claim, Plaintiff testified that he does not have any knowledge as to whether anyone at FCSO knew of this alleged fact. Barnett Dep. 111:3-7. Plaintiff has failed to state or offer any evidentiary support for a civil conspiracy claim, and this claim should therefore be dismissed.

## XIII. PLAINTIFFS' CONVERSION CLAIM FAILS AS A MATTER OF LAW.

In South Carolina, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp Nat'l Servs., Inc.*, 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993). "To establish the tort of conversion, it is essential that the plaintiff establish either title to or right to the possession of the personal property." *Id*. "Since conversion is a wrongful act, it cannot arise from the exercise of a legal right." *Castell v. Stephenson Finance Co.*, 244 S.C. 45, 51, 135 S.E.2d 311, 313.

As discussed above, Plaintiff does not identify which of the Defendants seized his property, and the evidence shows that Defendants Joye, Brown and Yarborough did not participate in any searches related to this case. Additionally, Plaintiff's conversion claim fails because the property that he alleges was seized was legally seized pursuant to the valid search warrants described above. *See Patterson v. City of Columbia*, No. C.A.3:02-2336-23, 2003 WL 23901761, at *14 (D.S.C. Dec. 29, 2003) (granting City's motion for summary judgment as to

conversion claim pursuant to § 15-78-60(9) of SC Tort Claims Act based on entry to property being authorized by search warrant), *aff'd*, 101 F. App'x 416 (4th Cir. 2004). The search warrants specifically state that law enforcement was "authorized to search the subject premises for the property described below, and to seize such property if found." The warrants cite to S.C. Code Ann. § 17-13-140 which provides the magistrate judge with the authority to issue a search warrant "to search for and seize…property constituting evidence of crime or tending to show that a particular person committed a criminal offense." All property alleged to have been seized by Defendants constituted evidence tending to show that Plaintiff committed the crime of impersonating a law enforcement officer.

Notably, Plaintiff has not presented any evidence to support his ownership of any of the items that were seized during the execution of the search warrants. Relevant here, Plaintiff alleges that he was a reserve deputy at the time of the traffic stops made the basis of his criminal charges but was no longer a reserve officer at the time that the search warrants were served. Dkt. No. 1-1 at 27. Ms. Campbell informed Investigator Owens that DCSO called him to turn in his equipment but he had not done so. *See* Owens Aff. Exhibit A at 18:12:52. Title 23, Chapter 28 of the South Carolina code applies to reserve police officers, and S.C. Code Ann. § 23-28-100 provides that "uniforms and equipment issued by the political entity shall remain the property of the entity." While all of the property alleged to have been seized was seized pursuant to a valid search warrant, much of the property alleged to have been seized did not legally belong to Plaintiff and therefore cannot support a claim for conversion. Investigator Owens confirmed that all of the Plaintiff's personal property that was seized during the search has been returned to him. Owens Aff. at 7. Based on the foregoing, Plaintiff's conversion claim should be dismissed.

## XIV.  PLAINTIFF'S NEGLIGENCE/GROSS NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW.

28

"[N]egligence is generally defined as 'the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or doing what such a person, under the existing circumstances, would not have done.'" *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 673 (D.S.C. 1995) (finding officer for City of Forest Acres did not act negligently when he had probable cause to arrest the plaintiff for speeding). Gross negligence is the failure to exercise slight care or "the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Etheridge v. Richland Sch. Dist. One*, 341 S.C. 307, 310, 534 S.E.2d 275, 277 (2000).

Similar to Plaintiff's other causes of action, Plaintiff does not identify any specific individual whose wrongful acts constituted negligence or gross negligence. In support of this claim, Plaintiff asserts conclusory allegations and generally alleges that "Defendants" performed a negligent investigation. *See* Dkt. No. 1-1 at 39 ("Defendants had a duty to investigate"). However, negligent investigation claims against law enforcement are not recognized in South Carolina. *See Smith v. Koon*, No. 3:19-CV-02155-JMC, 2021 WL 1172692, at *14 (D.S.C. Mar. 29, 2021), *reconsideration denied*, No. 3:19-CV-02155-JMC, 2021 WL 3931891 (D.S.C. Sept. 2, 2021); *see also Beaufort v. Thompson*, No. 220CV01197DCNMGB, 2021 WL 11132800, at *3 (D.S.C. Apr. 21, 2021) (finding that plaintiff's "sole remedy for his negligence/gross negligence claims is under the SCTCA, and he may not assert the same in federal court against any state employee in his or her individual capacity").Moreover, as discussed above, the evidence shows that none of the Defendants outside of Investigator Owens participated in the investigation that led to Plaintiff's criminal charges.

Plaintiff also appears to allege that he was arrested without probable cause, but such a claim is not viable because it "is indistinguishable from his malicious prosecution claim."

29

*Seabrook v. Town of Mount Pleasant*, 432 S.C. 441, 444, 853 S.E.2d 508, 510 (Ct. App. 2020). Nevertheless, as discussed above, the evidence before the Court shows that Plaintiff's impersonating a law enforcement officer and unlawful carrying of a handgun charges were supported by probable cause following a thorough investigation. The Plaintiff has not provided the Court with any evidence to the contrary much less evidence that any Defendant failed to exercise slight care. This claim should be dismissed.

## XV. PLAINTIFF'S STATE CONSTITUTIONAL VIOLATION CLAIM IS NOT RECOGNIZED IN SOUTH CAROLINA.

In his ninth cause of action, Plaintiff alleges a "violation of Article I, Section 3 & 10 of South Carolina Constitution." Dkt. No. 1-1 at 45. However, as this Court has recognized, "'[t]he South Carolina Constitution does not provide for monetary damages for civil rights violations and the legislature has not enacted an enabling statute' like 42 U.S.C. § 1983 for violations of the Federal Constitution." *Miller v. Greenville Cnty.*, No. 4:25-CV-0188-SAL-TER, 2025 WL 848688, at *2 (D.S.C. Feb. 24, 2025). This claim should therefore be dismissed.

## XVI. PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT AND COMPUTER FRAUD AND ABUSE ACT FAIL AS A MATTER OF LAW.

Plaintiff's eighth cause of action alleges a claim pursuant to S.C. Code Ann. § 17-30-135. Subsection (F)(1) states that any such claim against a government entity or employee is a tort within the meaning of the South Carolina Tort Claims Act. Therefore, S.C. Code Ann. § 15-78-70(a) and (c) apply and, as discussed above, this cause of action cannot be asserted against the individual Defendants. Additionally, because this claim arises out of the execution of a search warrant, the Defendants are not liable pursuant to S.C. Code Ann. § 15-78-60(3).

Aside from this claim being precluded by Plaintiff's consent, as discussed above, Plaintiff has failed to state a valid claim under S.C. Code Ann. § 17-30-135 because he does not allege

30

that Defendants "intercepted" any communications as set forth in the statute. "[I]nterception includes accessing the messages in transient storage on a server during the course of transmission, but does *not* include accessing messages stored on a destination server." *Ducharme v. Madewell Concrete, LLC*, No. CV 6:20-1620-HMH, 2021 WL 2141728, at *8 (D.S.C. May 26, 2021). "Plaintiff does not allege, and the record is devoid of evidence, that Defendants [ ] somehow intercepted [Plaintiff's communications] during their transmission either to or from Plaintiff's personal [ ] account[s] before the messages reached their destination." *Id*. Rather, the only evidence before the Court is that Defendant Price performed an extraction from Plaintiff's cell phone pursuant to a valid search warrant. "This conduct does not constitute interception under [§ 17-30-135] because any alleged interception was not contemporaneous with its transmission." *Id*. This claim should therefore be dismissed.

Plaintiff's tenth cause of action alleges a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Section 1030 contains seven unlawful categories of conduct that may give rise to a private cause of action under the CFAA. 18 U.S.C. § 1030(a)(1)-(7). "Summarily, the categories of conduct that violate section 1030 are unauthorized access to a computer[19]—i.e. hacking, knowing transmission of a computer virus, unauthorized trafficking in passwords, or using a computer to transmit communications in an extortion scheme with the threat of hacking or damage to a computer." *Pidanick v. Maddaloni*, No. 917CV00281DCNMGB, 2018 WL 11461946, at *3 (D.S.C. June 7, 2018), *report and recommendation adopted*, No. 9:17-CV-0281 DCN, 2018 WL 11461945 (D.S.C. June 25, 2018), *aff'd*, 742 F. App'x 753 (4th Cir. 2018). "When viewed in the light most favorable to the Plaintiff, the allegations in the Amended

---

[19] Plaintiff has failed to provide any evidence that his cell phone is a "protected computer" as defined by the CFAA and as required to maintain an action under the CFAA. 18 U.S.C. § 1030(e)(2) (protected computer is defined as US government computers, financial institution computers, computers used in interstate or foreign commerce, and computers used in federal elections or that are part of a voting system).

31

Complaint do not allege any cause of action under 18 U.S.C. § 1030." *Id*. "The Plaintiff has not alleged that any of the Defendants hacked a computer, transmitted a virus, trafficked in passwords, or tried to extort [him]." *Id*. Plaintiff alleges only that "Defendants accessed [his] electronic data and communications without authorization." Dkt. No. 1-1 at 46. Plaintiff has therefore failed to allege a cause of action under 18 U.S.C. § 1030. Moreover, this claim is unsupported by any legal authority, as there is no binding precedent in the Fourth Circuit that a cell phone qualifies as a protected computer as defined in the CFAA nor has any court held that factual circumstances remotely similar to those alleged by Plaintiff constitute a violation of the CFAA. Furthermore, Plaintiff has failed to provide any evidentiary support for this claim, and the evidence before the Court shows that Defendant Price accessed Plaintiff's phone pursuant to a valid search warrant. This claim should therefore be dismissed.

## XVII.  PLAINTIFF'S DEFAMATION CLAIMS FAIL AS A MATTER OF LAW.

To establish a defamation claim, a plaintiff must prove "(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Argoe v. Three Rivers Behavioral Health, LLC*, 392 S.C. 462, 469, 710 S.E.2d 67, 74 (2011). "The protection of privilege extends generally to remarks made in the prosecution of an inquiry regarding a crime which has been committed; and for the purpose of detecting and bringing the criminal to punishment. *Bell v. Bank of Abbeville*, 208 S.C. 490, 494, 38 S.E.2d 641, 643 (1946).

In this case, Plaintiff's defamation claim lacks any factual support and is little more than a recitation of the above elements. While he alleges that "Defendants accused him of criminal conduct," he does not identify any specific Defendant who made a false statement about him or

any third party to whom such a statement was made. *See Carson v. Emergency MD, LLC*, No. CV 6:20-1946-HMH, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020) (observing that "[m]any courts applying South Carolina law have found that a lack of specificity in a plaintiff's allegations regarding a defamation claim warrants dismissal" and dismissing defamation claim because plaintiff "failed to allege what defamatory statements were made" or "to whom the defamatory statements were published").

To the extent that Plaintiff bases this claim on written or spoken statements made during the warrant application process, "statements in support of an arrest warrant application are qualifiedly privileged under South Carolina law." *Adams v. Cnty. of Lexington*, No. CV 8:20-4296-MGL-PJG, 2022 WL 21747956, at *10 (D.S.C. May 19, 2022); *see also* 20 S.C. Jur. *Libel and Slander* § 55 (1993) (observing that South Carolina courts have recognized a qualified privilege for communications protecting or promoting law enforcement interests as well as "common interest" statements of a legal, moral, or social nature). Moreover, to the extent that Plaintiff bases this claim on any statement that he was arrested, "[t]ruth of a statement is a defense to defamation." *Kennedy v. Richland Cnty. Sch. Dist. Two*, 428 S.C. 98, 130, 833 S.E.2d 414, 431 (Ct. App. 2019). It is an undisputed fact that Plaintiff was arrested. *See* Dkt. No. 1-1 at 30. Because Plaintiff has not stated a defamation cause of action against any Defendant or provided any evidence showing a false or unprivileged statement, this claim should be dismissed.

As for Plaintiff's "defamation by omission" claim, it does not appear that any such cause of action is recognized in South Carolina. Plaintiff alleges that the defamatory of statements of "Defendants" required Defendants McDaniel and Yarborough "to refute the allegations." Even if these allegations constituted a cognizable claim, the evidence before the Court shows that

33

McDaniel and Yarborough were not aware that Plaintiff was a law enforcement officer. McDaniel Dep. 24:14-19, Yarborough Dep. 64:1-10.[20] This claim should therefore be dismissed.

## XVIII. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Defendants claim qualified immunity as an affirmative defense. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Roberts*, 902 F. Supp. at 668. "[T]he specific right that a plaintiff asserts was infringed upon must be identified at a high level of particularity" and "[t]here must be controlling authority within the Circuit itself conclusively demonstrating that the challenged action was unconstitutional." *Harrison v. Owens*, No. CIV.A. :11-2215-MGL, 2014 WL 3101266, at *7 (D.S.C. July 7, 2014). Especially in the context of police work, holding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement. *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir. 1995). The touchstone of qualified immunity is the "objective legal reasonableness" of the officer's action assessed in light of the legal rules that were clearly established at the time it was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (*quoting Harlow*, 457 U.S. at 818–19.). In other words, an officer will be immune from liability under Section 1983 if his actions "could reasonably have been thought consistent with the rights [he] is alleged to have violated." *Id*. at 638.

Not only has the Plaintiff failed to cite to any controlling authority within the Fourth Circuit that conclusively demonstrates that the Plaintiff's arrest and the searches at issue were

---

[20] Defendant McDaniel's SCCJA Training History Report, provided herewith as **Exhibit 11**, shows that he has not been employed by DCSO since January of 2017. Defendant Yarborough was employed by DSCO for five months until April of 2019. *See* Yarborough Dep. 17:12-24.

unconstitutional, but the Supreme Court has held that "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S. Ct. 1235 (2012). Nor do the facts of this case fall into the narrow exception "allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant would issue.'" *Id*. at 547. Rather, Plaintiff has failed to prove that the warrants were "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. "Even if the warrant[s] in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered 'plainly incompetent' for concluding otherwise." *Id*. at 556.

Moreover, this Court has held that, at the time of Plaintiff's arrest, "there [was] no case that establishes that pointing a weapon at a suspect believed to be armed during [a traffic] stop, where that suspect is not yet secure, violates the Fourth Amendment." *Magwood*, 2021 WL 2885975, at *4. Plaintiffs have not cited to any binding precedent holding otherwise. Defendants are therefore entitled to qualified immunity as to Plaintiff's civil rights claims.

## CONCLUSION

WHEREFORE, for the reasons stated above, Defendants request that this Motion be granted and that this Court render judgment in their favor. Defendants pray for such other relief, both general and special, legal or equitable, to which they may be justly entitled.

Respectfully submitted this 25th day of July, 2025.

**RICHARDSON, PLOWDEN & ROBINSON, P.A.**

*s/ James E. Haarsgaard*
James E. Haarsgaard (Fed. ID No. 12298)
235 Magrath Darby Blvd., Suite 100
Mount Pleasant, South Carolina 29464
jhaarsgaard@richardsonplowden.com
Phone: (843) 805-6550
***ATTORNEY FOR DEFENDANTS***