UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Daniel Barnett, | ) | |
| | ) | C/A No.: 4:23-cv-00294-JD-TER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AFFIDAVIT OF CHRISTOPHER OWENS** |
| | ) | |
| Florence County, South Carolina, Florence | ) | |
| County Sheriff's Office, Florence County | ) | |
| Detention Center, Florence County Sheriff T.J. | ) | |
| Joye, Anderson Beane, Scott Brown, Darrin | ) | |
| Yarborough, Christopher Owens, Chase | ) | |
| McDaniel, & Ben Price, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Personally appeared before me, Christopher Owens, who being duly sworn, deposes and states as follows:

1. I am above the age of eighteen (18) and am competent to declare the facts stated herein.

2. At all times relevant to the claims asserted by Daniel Barnett, I was an Investigator for the Florence County Sheriff's Office.

3. On February 9, 2021, FCSO Sgt. Ron Harris called me regarding a complaint that an individual, subsequently identified as Daniel Barnett, was impersonating a police officer and conducting illegal traffic stops in Florence County. The complainant specifically stated that Mr. Barnett was not a law enforcement officer in Florence County and worked for the Social Security Administration. The complainant further stated that Mr. Barnett's girlfriend recorded four traffic stops on her cell phone.

1

4.     Shortly after the complaint came in, I was informed that FCSO Sheriff T.J. Joye had checked with area law enforcement agencies who confirmed that Mr. Barnett was not employed with them.

5.     On the same date, I spoke with Mr. Barnett's girlfriend, Katelyn Campbell, who voluntarily came into the office for an interview. A true and accurate copy of the recording of that interview is attached as **Exhibit A**.

6.     Ms. Campbell showed me 4 videos that she had recorded on her cell phone along with the dates and locations of each traffic stop which I determined were all in Florence County. Three of these videos are attached as **Exhibit B**. It appeared that 2 of the traffic stops were on I-95 with one being near the Highway 76 interchange near Timmonsville. Mr. Barnett conducted another traffic stop in front of his residence on Rice Planters Lane in Florence County. The fourth traffic stop that Mr. Barnett conducted was around Johnsonville which is in Florence County. According to the dates on the videos, these traffic stops were conducted between October and December of 2020. Each video showed Mr. Barnett approach the vehicles in civilian clothes while in possession of a handgun.

7.     During the interview, Ms. Campbell informed me that she had seen Mr. Barnett with multiple law enforcement badges from different agencies, she had seen police issued equipment at his residence, and he saved his traffic stops on electronic media inside of his home. She informed me that he did not work for Darlington County Sheriff's Office.

8.     Ms. Campbell informed me that Mr. Barnett conducted the four traffic stops noted above in his personal vehicle while carrying a gun. She stated that his personal vehicle was a white 2017 Chevy Tahoe. She described how Mr. Barnett modified his personal vehicle to appear to be

2

a law enforcement vehicle by installing flashing blue lights, in-car surveillance cameras, sirens, a grill brush guard, dark tinted windows, and a mount for a computer.

9. On February 10, 2021, I ran Mr. Barnett's name through the SCDMV database and found that he was the owner of a 2017 Chevy Tahoe. An accurate copy of the results of this search are attached as **Exhibit C**.

10. Based on the foregoing evidence, I sought arrest warrants on February 11, 2021 for Mr. Barnett for impersonating a police officer and unlawful carrying of a handgun. An accurate copy of those warrants are attached as **Exhibit D**.

11. On the same date, I sought and obtained a search warrant for Mr. Barnett's residence and any vehicles located at the residence. Because I received information from Ms. Campbell that Mr. Barnett had recorded the illegal traffic stops and stored the video footage on his electronic devices, I specifically included the digital contents of all electronic devices as property sought. An accurate copy of this search warrant is attached as **Exhibit E**. Prior to the issuance of the arrest and search warrants, I testified under oath to the evidence in support of the warrants. A magistrate judge then signed the warrants.

12. I planned to organize the service of the arrest and search warrants at the same time on February 11, 2021. Prior to the service of the warrants, a Warrant Service Risk Assessment was conducted. An accurate copy of the Risk Assessment is attached as **Exhibit F**. The total score on the Risk Assessment in this case was extremely high. Most significant was the known fact that Mr. Barnett had conducted the illegal traffic stops on members of the general public while displaying a firearm. The high Risk Assessment score in this case meant that FCSO's SWAT team was required to serve the warrants.

13. Immediately prior to serving the warrants, I was in contact with an FCSO investigator who was watching Mr. Barnett's home, and the investigator informed me that Mr. Barnett was leaving his home while we were at the off-site staging area. The investigator stated that Mr. Barnett was traveling in a white Chevy Tahoe with SC license plate number PCZ334.

14. When we heard that Mr. Barnett left his home, we immediately left the staging area and conducted a traffic stop on a white Chevy Tahoe with SC license plate number PCZ334. I observed that law enforcement's weapons were drawn for approximately 30 seconds pursuant to the Risk Assessment score until Mr. Barnett was handcuffed. As Mr. Barnett opened the door to his vehicle, I observed a handgun which was within his reach and attached under the dashboard of the vehicle. The photograph attached as **Exhibit G** was taken during the traffic stop and depicts the handgun as I observed it at that time.

15. At no time during the traffic stop did I observe Mr. Barnett being taken to the ground by anyone. I did not hear any exchange of words between Mr. Barnett and Anderson Beane.

16. During the stop, Mr. Barnett requested to call someone to make child care arrangements. I went to Mr. Barnett's vehicle and observed a cell phone with a green and black case inside the vehicle.

17. During the stop, I informed Mr. Barnett of my intent to obtain a search warrant for his cell phone. Mr. Barnett then consented to a search of his cell phone and provided me with the passcode to his cell phone. Although Mr. Barnett consented to the search the phone, I returned it to the location where I found it in the vehicle until I could obtain a search warrant. The cell phone's location inside of the vehicle during the traffic stop is depicted in Exhibit G.

18. During the stop, I performed an inventory search of the vehicle in accordance with FCSO's policies and procedures prior to it being towed. The contents of the vehicle were

4

documented by 36 photographs taken during the inventory search including the photograph attached as Exhibit G. I did not remove any items from the vehicle at the scene of the traffic stop.

19.     While performing the inventory search, I observed in plain view the handgun that was illegally attached under the dashboard as well as a dash camera, light bar, and laptop stand as previously described by Ms. Campbell. I also observed multiple firearm magazines in multiple caliber sizes and an empty handgun holster between the driver's seat and center console. I observed that the handgun under the dashboard was a fully loaded Glock 43. I did not observe any other handguns inside of the vehicle.

20.     Because Mr. Barnett's vehicle was not on the premises referenced in the original search warrant, it was towed to the secure FCSO impound lot as evidence until an additional search warrant could be obtained. To my knowledge, no one accessed the vehicle from the time that it reached the impound lot until I executed the search warrant.

21.     Following the traffic stop, I proceeded to Mr. Barnett's residence to execute the search warrant. During the search, I observed numerous law enforcement related items inside of the residence from different law enforcement agencies. Many of the items that I observed were items that, from my experience, should not have been in Mr. Barnett's residence even if he was a law enforcement officer because the items were the property of various law enforcement agencies. These items were seized and not returned to Mr. Barnett because they were not legally his property. I instructed an FCSO employee in evidence to contact each agency to determine whether they wanted their property returned. All personal property items that were removed from the residence were subsequently returned to Mr. Barnett. All items collected from the residence were logged and listed on the search warrant return (included in Exhibit E). The "notebook with personal information" contained names, birth dates, addresses, license plate numbers, and social security

numbers for numerous individuals. A photograph of the outside of the notebook is pictured below. All similar items seized contained similar information that showed Mr. Barnett was acting as a law enforcement officer by collecting personal information of third parties.



22.     On February 15, 2021, I sought a search warrant for Mr. Barnett's vehicle and the property that I was seeking was the same as the search warrant for Mr. Barnett's residence and included the digital contents of all electronic devices found within the vehicle. I again testified under oath as to the evidence in support of the warrant and a magistrate judge signed the warrant. I executed the warrant on Mr. Barnett's vehicle the same day. A copy of this search warrant is included in Exhibit D.

23.     During the search of Mr. Barnett's vehicle, I located light bars affixed to the inside of the vehicle's windshield that flashed blue lights in a rhythmic pattern. I also found that Mr. Barnett had installed a siren on his vehicle. I located an eavesdropping device, a roadside drug test

for cocaine, and an in-car camera. A photograph of one of the light bars is attached as **Exhibit H**. A video of the siren audio is attached as **Exhibit I**. In addition to the foregoing items, I removed the Glock 43. I also removed the black and green cell phone and provided it and its passcode to Ben Price to perform a search for digital evidence that may be contained on it. I observed a child's car seat in the backseat of the vehicle. All items removed from the vehicle were listed in the search warrant return (included as Exhibit E). All personal property seized from the vehicle, including the handgun, has since been returned to Mr. Barnett.

24.     Following Mr. Barnett's arrest, I was contacted by an investigator with the Office of Inspector General who asked to be informed of the case because Mr. Barnett was an employee of the Social Security Administration and she wanted to take possession of his work computer. At no time did I initiate contact with the investigator, and she came to FCSO to obtain the laptop.

25.     During Ben Price's subsequent search of Mr. Barnett's cell phone, he made me aware of screenshot photographs that were on Mr. Barnett's cell phone and depicted the personal identifying information of third-parties on what appeared to be an SSA database. It appeared that this information was shared by text message with a SCDMV employee. Because these screenshots containing personal information were on Mr. Barnett's personal cell phone, the SSA investigator was notified and provided a printed copy of the screenshots as evidence of a possible crime. At no time did I provide the SSA investigator or anyone else outside of FCSO any digital files from Mr. Barnett's cell phone.

26.     During the investigation, repeated requests for any and all employment records were requested for Mr. Barnett from Darlington County Sheriff's Office. These requests were ignored, and I eventually was forced to obtain a search warrant for the records. The records showed that Mr. Barnett was a part-time deputy with DCSO during the time that he conducted the traffic

7

stops. At that time, I spoke with a representative from the South Carolina Criminal Justice Academy who informed me that, although Mr. Barnett was a part-time DCSO deputy, he did not have authority to conduct traffic stops in Florence County. I also spoke with the prosecutor handling the charges who confirmed that the impersonating charges remained sound because Mr. Barnett was impersonating a law enforcement officer when he acted as a law enforcement officer outside of his jurisdiction.

27.    The actions that I took during this case were in accordance with my training from the South Carolina Criminal Justice Academy as well as FCSO's policies and procedures.

28.    At no time did I have any knowledge that Mr. Barnett was involved in any investigations related to Mark Fuleihan or Anderson Beane until I read the allegations asserted in this lawsuit.

29.    Prior to the initial complaint, I did not know Mr. Barnett and was completely unfamiliar with him.

FURTHER THE AFFIANT SAYETH NOT.

_____
Christopher Owens

SWORN to and subscribed before me
this 23RD day of July, 2025.

_____
Notary Public for the State of South Carolina

My Commission Expires: 4/18/2027

8