Page 1

In the United States District Court

District of South Carolina

Florence Division


Daniel Barnett
     plaintiff,

V.                              #4:23-CV-00294-JD-TER

Florence County, South Carolina, Florence County
Sheriff's Office, Florence County Detention
Center, Florence County Sheriff T.J. Joye,
Anderson Beane, Scott Brown, Darrin Yarborough,
Christopher Owens, Chase McDaniel, & Ben Price,
     defendants,


Deposition of: Chase D. McDaniel

Location:  181 East Evans Street
           Florence, South Carolina

Date:  Tuesday, May 21, 2024

Time:  9:22 a.m. - 12:01 p.m.

Court Reporter:  Erica Creel


The deposition is taken pursuant to notice

and/or agreement, in the above-entitled cause

pending in the above-named court and pursuant to

the Federal Rules of Civil Procedure.


Q & A COURT REPORTING SERVICES
Post Office Box 4563 (29502)
181 E. Evans St., Suite 203 (29506)
Florence, South Carolina
Telephone:  (843) 673-9845
E-mail:  info@qacourtreportingonline.com
Visit:  Www.qacourtreportingonline.com

him, right?

A    Right.

Ms. Thomas:  Object to form.  You can answer if you know.

The Deponent:  Okay.

By Mr. Moss:

Q    So you knew he was a police officer at least at one point?

A    At one point I did.  Yes, sir.

Q    Do you recall telling that to anyone at this staging hearing?

A    No.

Q    Okay.

A    Because I didn't know what his current status was at that point.  I had already left the department, came back to Florence and I haven't really had contact with him as far as what his status was within the last 30 to 45 days of that incident.

Q    Okay.  So in connection with the investigation into my client, did you actually meet with or interview any witnesses or report them or photograph them?  Any witnesses to the alleged allegations?

A    No.

Q    Okay.  Did you ever speak to any witnesses by phone?

A    No.

Q    Okay.  Were you in court at all with my client before any court bond or preliminary hearing or anything?

A    No, sir.

Q    Okay.  Were you involved at all in the obtaining of any search warrants for my client's home or automobile?

A    No, sir.

Q    Okay.  Did you ever have an occasion to seek permission from my client or anyone else to search his home or his vehicle or his electronic equipment?

A    No, sir.

Q    Okay.  Were you present when Mr. Barnett was arrested?

A    Yes, sir.

Q    So you -- you went from the staging area to the scene of the arrest?

A    Yes, sir.

Q    Had he been arrested at the time that you got to the scene or were you at the scene prior to his arrest?

Page 26

A     I -- I pulled up as they were -- the traffic stop was being made and they got him out the car, had him in handcuffs, then I pulled up, got out of my car.

Q     Okay.  And did you approach his vehicle?

A     Yes, sir.

Q     Okay.  Did -- do you know who -- who -- which officer or deputy actually arrested Mr. Barnett?

A     I -- no -- I cannot remember.  So many different officers out there.  I don't know who actually put him in handcuffs, I couldn't tell you.

Q     Okay.  Do you know who spoke with him?

A     No, sir.

Q     Okay.  Do you remember any dialogue with Mr. Barnett at the time of his arrest?

A     Dialogue between he and I?

Q     He and an officer?  He and any officer?

A     Oh.  No, sir.

Q     Okay.  Were you close enough where you could have heard dialogue between he and an

Page 34

evidence software package that we give you so they can actually receive things by text messages or by email and download it into evidence.  Do y'all have anything like that?

A    We do now, yeah.  But at the time we didn't have that.

Q    Okay.  So I understand you were at the staging area preparing for the execution of the search warrant, but going to my client's arrest, did you have any role in organizing, arranging for his actual arrest?

A    No.

Q    Okay.  Were the arrest warrants the subject of a briefing or conversation at the staging area?

A    I can't remember.  I'm just more focused on my part, what I had to do.

Q    Okay.  So I believe you said you were present and saw my client being arrested by officers?

A    Yes, sir.

Q    And you don't remember who the officers were that actually arrested him?

A    That laid hands on him?  No, sir.  I don't remember.

Page 35

Q    Okay.  Do you remember anything about my client's conduct that you thought was physically or verbally threatening or offensive?

A    No.

Q    Okay.  Did you -- do you recall seeing Sergeant Beane point a rifle at my client in close proximity to his face?

A    No, sir.  I wasn't there to see any of that.

Q    Okay.  Do you recall hearing any remarks Sergeant Beane made to my client?

A    No, sir.

Q    So was my client's car searched on the scene of this arrest?

A    Yes, sir.

Q    Okay.  Did you have any part in that search other than the photographs you took?

A    Photographs, that's it.  And --

Q    Okay.

A    -- collected anything that they gave me to take out of it.

Q    That who gave you?

A    That -- any officer that took something out of it to give to me to take in as evidence, then I took those items.

Page 50

file in a paper case file in our file cabinet.

Q    Okay.  Well, did -- how about the investigator's notes or the investigator's documents that the investigator may have obtained, witness statements?  Would they have been in the same location as the forensics?

A    No.

Q    Okay.  So --

A    Two separate -- two separate departments they are down the hallway and on the other end of the hallway.

Q    Okay.  Y'all each maintain your own files --

A    Yes, sir.

Q    -- physical and electronic?

A    Yes, sir.

Q    Is it that way now that y'all have a different kind of evidence program?

A    Yes, sir.

Q    Okay.  So did you personally have any involvement in viewing, or inspecting, or downloading any electronic data recovered from my client's recording equipment in his car or his home?

A    No, sir.

Page 51

Q    How about -- same question for any cell phone that was seized from my client?

A    No, sir.

Q    Or any tablet or computer?

A    No, sir.

Q    Okay.  Did you have any role or involvement in analyzing any data that was taken from any place?

A    No, sir.

Q    Okay.  There was a -- you know what S.D. card is?  We talked about one, right?

A    Yes, sir.

Q    I submit to you there was one taken from my client's dash camera that he had in his car at the time of his arrest.  Do you know where that is?

A    No, sir.

Q    Okay.  Do you know of any reason why it shouldn't be returned to him?

A    I have no reason of why it shouldn't be.

Q    Okay.  Are you aware that one of the allegations of this lawsuit is that a 40 caliber Glock handgun my client had is -- was taken but not returned to him?

A    Okay.

(Whereupon, a break was taken from the proceedings.)

By Mr. Moss:

Q    Mr. McDaniel, we're back on the record after a short break and I just only have a few more questions to ask you.

A    Yes, sir.

Q    To your knowledge, did anyone -- you or anyone else with the Florence County Sheriff's Office prior to Mr. Barnett's arrest in the search of his home and auto ask Mr. Barnett if he was a law enforcement officer?

A    I have no knowledge of that. I knew nothing about the case until I was asked to go to the stage.

Q    Okay. And so to your knowledge, did you or anybody else communicate with the South Carolina Criminal Justice Academy to confirm whether or not Mr. Barnett was law enforcement prior to his arrest or search of his home?

A    No, sir. I have no knowledge of that.

Q    Okay. And did you, or to your knowledge, anyone in Florence County Sheriff's