4:23-cv-00294-JD    Date Filed 07/25/25    Entry Number 39-16    Page 1 of 6

Page 1

In the United States District Court
District of South Carolina
Florence Division

Daniel Barnett,
        plaintiff,

V.                          #4:23-CV-00294-JD-TER

Florence County, South Carolina; Florence County
Sheriff's Office; Florence County Detention
Center; Florence County Sheriff T. J. Joye;
Anderson Beane; Scott Brown; Darrin Yarborough,
Christopher Owens; Chase McDaniel and Ben Price,
        defendants.

Deposition of:  Scott Brown

Location:  181 East Evans Street
            Florence, SC

Date:  Monday, May 20, 2024

Time:  1:16 p.m. - 3:26 p.m.

Court Reporter:  Roger R. Williamson


The deposition is taken pursuant to notice

and/or agreement, in the above-entitled cause

pending in the above-named court and pursuant to

the Federal Rules of Civil Procedure.


Q & A COURT REPORTING SERVICES
Post Office Box 4563 (29502)
181 E. Evans St., Suite 203 (29506)
Florence, South Carolina
Telephone:  (843) 673-9845
E-mail:  info@qacourtreportingonline.com
Visit:  Www.qacourtreportingonline.com

Q    Okay.

A    I -- there's a possibility I've seen it, you know, but I don't remember.

Q    Well, I submit to you it's what we call reservation of rights letter.  The fact it says, around the front, reservation of rights. And it recites in here that, from the county's insurance carrier, the insurance reserve fund, that some of the claims that were made in this lawsuit are not covered under the county's policy, but they're nevertheless provided a defense through your attorney.  When I see these, it prompts me to ask, do you have any other attorney that's representing you or your consulting with you in this case other than the two that are with you today?

A    No, sir.

Q    Okay.  Now, do you know my client, Mr. Barnett?

A    I -- if I -- if -- you had to introduce me, I didn't know who he was.  I mean I've seen him, but I don't know him.

Q    Okay.  Were you involved in any way with an investigation or arresting of my client?

A    I would say I was involved during --

that others took related to the investigation to my client?

A    No, sir.

Q    Did you speak any witnesses by phone?

A    No, sir.

Q    Okay.  Were you in court at any time with my client where he was a defendant, perhaps in a preliminary hearing or otherwise?

A    No, sir.

Q    Okay.  Were you involved in any way in obtaining any warrants for my client's arrest or for search of his home residence?

A    No, sir.

Q    Okay.  So, now, in the chain of command, the officers that did execute the search warrant, did they report to you?  Were they in your chain of command?

A    So the investigators are not.

Q    Okay.  But, now, the investigators were assisted in executing the warrant by other officers; is that right?

A    They were assisted by our SWAT team, yes, sir.

Q    Okay.  And so are members of the

Page 21

Q    Okay.  What about in the arrest of my client, do you know where my client was arrested?

A    He was taken into custody at Palmetto Street Church of God, I believe it was.

Q    Were you there?

A    I was.

Q    Okay.  Did you participate at all in the -- in his arrest?

A    No, sir.  I was driving the BearCat.

Q    You were doing what?

A    I was driving the BearCat.

Q    What is the BearCat?

A    An armored vehicle.

Q    Okay.  And where were you driving from and to?

A    Originally driving it to Barnett's house.

Q    Okay.

A    But he left from there, so I followed the guy--- the units with him.

Q    Okay.  So do you have any idea how many officers were with you in the BearCat?

A    The exact number, I'm not sure.

Q    Would there be any log or record of

Page 37

Q    Okay.  Did you ever participate in viewing or inspecting any electronic data that was recovered from my client's car recording equipment?

A    No, sir.

Q    Okay.  Were you aware that he had recording equipment in his car, like a -- like a dash camera?

A    I had heard it, but never seen it.

Q    Have you ever -- have you ever seen any video from it?

A    The only -- the only video I saw was the video that was shown to me on --

Q    Before -- before --

A    Yes, sir.

Q    Okay.  And you didn't have any role in the actual seizing or collecting or analyzing evidence from the car, correct?

A    No, sir.

Q    Okay.  So you were present in my client's home when the home was searched, right?

A    No, sir.

Q    You weren't?

A    You said I was present in his home. No, I was not.

A    Bates stamp 00055.

Q    Okay.  When you're reading that document, would the collection of paper files or handwritten notes be properly within the subject of this warrant?

A    Give me -- explain -- ask me that one more time, sir.

Q    From your reading of this warrant, would the collection of paper files or handwritten notes be properly the subject of this warrant?

A    I'm going to say anything that's indicative of law enforcement authority.

Q    Okay.  So were you aware that my client had investigated Lieutenant Fuleihan and cooperated with the FBI and SLED prior to Lieutenant Fuleihan's arrest?

A    No, sir.

Q    You weren't aware of that?

A    No, sir.

Q    Okay.  Do you think a paper file that my client maintained related to his investigation of Lieutenant Fuleihan would be properly the subject of this warrant?

A    I can't say it would.