Page 1

In the United States District Court
District of South Carolina
Florence Division

Daniel Barnett,
        plaintiff,

V.                              #4:23-CV-00294-JD-TER

Florence County, South Carolina; Florence County
Sheriff's Office; Florence County Detention
Center; Florence County Sheriff T. J. Joye;
Anderson Beane; Scott Brown; Darrin Yarborough,
Christopher Owens; Chase McDaniel and Ben Price,
        defendants.

Deposition of:  Darrin Yarborough

Location:  181 East Evans Street
           Florence, SC

Date:  Monday, May 20, 2024

Time:  9:03 a.m. - 10:36 a.m.

Court Reporter:  Roger R. Williamson

The deposition is taken pursuant to notice

and/or agreement, in the above-entitled cause

pending in the above-named court and pursuant to

the Federal Rules of Civil Procedure.

Q & A COURT REPORTING SERVICES
Post Office Box 4563 (29502)
181 E. Evans St., Suite 203 (29506)
Florence, South Carolina
Telephone:  (843) 673-9845
E-mail:  info@qacourtreportingonline.com
Visit:  Www.qacourtreportingonline.com

a little while together.

Q    Okay.  Was he ever in your chain of command?

A    No, sir.

Q    Okay.  So let's talk about your time at the Darlington County Sheriff's Office.  What was your role there?

A    Started off there as the major over patrol.  I had patrol, the SWAT team.  I was the major critical response team to the nuclear plant and narcotics.

Q    Okay.  Now, this document I received from the Criminal Justice Academy implies you started at the Darlington County Sheriff's Office in December of '18.  Does that sound right?

A    Yes, sir.

Q    And it -- it shows employment there through April of '19.  Does that sound about right?

A    Yes, sir.

Q    Okay.  That's about, what, five months?

A    Yes, sir.  Closely, yeah.  Uh-huh.

Q    Okay.  Who was the sheriff when you

work--- he used to work for Darlington County.

Q   Okay.  Were you aware of that at the time you had discussions with Chris Owens?

A   That he -- yes, sir.

Q   Was Chris Owens aware of that?

A   I guess he was, yes, sir.  I can't speak for him.

Q   Okay.  I -- well, did he tell you anything about it, his prior role as a police officer?

A   We didn't go into details of it, but that he used to work for Darlington County.

Q   Okay.  So walk me through all -- all and any parts of the investigation that you were involved in personally.

A   I wasn't.

Q   Okay.

A   Like I said, I was just -- I'm -- I'm the captain over investigations.  I did not get into -- I didn't get in -- in de--- in detail into it.  I mean, I basically let my investigators do their investigations.  If they have any questions, they come to me or they come to the lieutenant.  If he has any questions, he comes to me.  And that's basically my role in

it.

Q    To your recollection, did any of them come to you with questions?

A    No, sir.

Q    So did you meet in person or witness a meeting in person with any witnesses?

A    No, sir.

Q    Okay.  Were you in court at any time with my client?

A    No, sir.

Q    Okay.  What about after my client's arrest?  Were you involved in any investigation after the arrest?

A    No, sir.

Q    At the scene of his arrest, what role, if any, did you have?

A    None.  I was just there.

Q    Okay.  Do you recall any command decisions made by you at the scene of my client's arrest?

A    No, sir.

Q    Were you there when they took my client away?

A    Yes, sir.

Q    Were you there when my client's

vehicle was taken somewhere?

A    No, sir.  I think I probably had left by that time.

Q    Okay.  Who was in charge at the scene of my client's arrest?

A    That would be the SWAT team or the -- yeah, the SWAT team that was there.

Q    Okay.  Would that be Captain Brown's team?

A    Yes, sir.

Q    Okay.  So who would have been in charge of securing that scene with respect to my client's vehicle?

A    The officers that were there.

Q    Okay.  Who would have been -- who would have been the command officer in charge?

A    That would have been Captain Scott Brown.

Q    Okay.

A    If he was there.

Q    Were you involved in any way in obtaining search warrants or conversations about the scope of the search warrant in my client's premises --

A    No, sir.

Page 28

Q    -- or home?  Okay.  And you were there when my client was arrested?

A    Yes, sir.

Q    Was my client threatening in any way to officers in any -- any manner that you noticed?

A    No, sir.

Q    Did you hear dialogue between my client and any of the arresting officers?

A    No, sir.

Q    Did you notice or see Sergeant Beane approach my client with an assault rifle?

A    I can't recall.  I can't recall.

Q    Did you point a weapon at my client?

A    No, sir.

Q    Okay.  Let me ask you, if you point a loaded rifle at a suspect during an arrest, is that considered a use of force?

A    Yes, sir.

Q    Have you ever seen a use of force report related to my client's arrest?

A    No, sir.

Q    If pointing a loaded weapon at my client was use of force, should a use of force report have been prepared?

between my client and Sergeant Bean?

A    No, sir.

Q    Okay.  Well, if mister -- if Sergeant Bean had referred to my client as a motherfucker, would that have been consistent with Florence County Sheriff's Office policies and procedures?

A    No, sir.

Q    Were you present at any time my client's car was searched, either on the scene or elsewhere?

A    No, sir.

Q    Okay.  Did you ever read the arrest warrants?

A    No, sir.

Q    Okay.  Did you ever read the search warrants?

A    No, sir.

Q    Okay.  Any i--- did you have any idea what they were looking for?

A    No, sir.

Q    Do you know who searched my client's car at the scene?

A    No, sir.

Q    Were you aware that my client's

Q    Well, I don't mean you individually, but I mean the Florence County Sheriff's Office.

A    Looking at this, yes, sir.

Q    And that -- that was in the amended complaint.  You're aware of that, right?

A    Yes, sir.

Q    And to your knowledge, has any other investigation -- any other agency been asked to investigate these allegations?

A    No, sir.  Not to my knowledge.

Q    It's a pretty serious allegation, isn't it?

A    Yes, sir.

Q    Were you present at the -- when my client's home was searched?

A    No, sir.

Q    Are you aware there are allegations in this complaint that property was taken from my client's home and not inventoried in a search warrant return?

A    No, sir.  I am not aware of that.

Q    Are you aware there are allegations that property was taken from my client's home and not returned to him?

A    No, sir.  I am not aware of that.

Page 63

A    No, sir.

Q    Okay.  Do you -- do you know where this is?

A    I don't.  No, sir.

Q    Did you have any role in the investigation of former Lieutenant Mark Fuleihan?

A    No, sir.

Q    Are you aware that my client had a role in that investigation?

A    No, sir.

Q    Do you know what Lieutenant Fuleihan was charged with?

A    No, I can't -- I can't recall what he was charged with.

Q    Okay.  Are you aware of any allegations about the use or sale of steroid drugs by any of the Florence County Sheriff's Office staff?

A    The use of what?

Q    Anabolic steroids.

A    Oh, no, sir.

Q    You're not aware of those allegations?

A    No, sir.

Q    Okay.  In connection with this case, when did you learn my client was a class one law enforcement officer?

MS. THOMAS:  Object to the form.

THE DEPONENT:  I actually never learned that he was one.

By Mr. Moss:

Q    Okay.  What did you learn?

A    Again, I just heard he was one, but I have no knowledge of his class one.

Q    Are you aware of why the charges against him were dismissed?

A    No, sir.

Q    Captain, have you understood all my questions today?

A    Yes, sir.

Q    Have I asked you a question today that you thought was offensive or in any way unprofessional?

A    No, sir.

Q    Is there anything about your responses that you feel that you need to expand upon or change?

A    No, sir.

MR. MOSS:  I'm not going to ask you